FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 15, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL K.,[1]<br><br>            Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, the Commissioner of Social Security,<br><br>            Defendant. | No.   4:19-CV-5261-EFS<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Paul K. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's symptom reports; and 3) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 10, and denies the Commissioner's Motion for Summary Judgment, ECF No. 11.

## I. Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of February 1, 2015.[18] His claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Stewart Stallings.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since February 1, 2015, the alleged onset date;

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 215-24.

[19] AR 125-28 &131-32.

[20] AR 31-68.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step two: Plaintiff had the following medically determinable severe impairments: irritable bowel syndrome (IBS), depression, anxiety, personality disorder, and post-traumatic stress disorder (PTSD);
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;
- RFC: Plaintiff had the RFC to perform medium work with the following additional limitations:

    > [Plaintiff] needs a low stress work environment with [sic] does not require dangerous work related circumstances, no sales quotas, a predictable pace of work, and work that requires no more than superficial contact with the public. There is no limitation on phone or computer interaction. [Plaintiff] can be around coworkers, but should only have occasional interactions with both coworkers and supervisors.

- Step four: Plaintiff could perform past relevant work as a teller; and
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as stores laborer/warehouse worker, automobile detailer, and laundry worker.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- significant weight to the reviewing opinion of James Irwin, M.D.;

---

[21] AR 12-33.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- partial weight to the reviewing opinion of Diane Fligstein, Ph.D. and the evaluating opinion of Kirsten Nestler, M.D.; and
- little weight to the treating opinion of Kaila Mitchell, LICSW.

In addition, the ALJ gave limited weight to the statements of Plaintiff's partner and four of his friends.[22] The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

---

[22] AR 22.

[23] AR 20-21.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

---

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

## IV. Analysis

**A. Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's assignment of little weight to the treating opinion of Kaila Mitchell, LICSW, while giving significant weight to the reviewing opinion of James Irwin, M.D., and assigning partial weight to the one-time examining opinion of Kirsten Nestler, M.D. As discussed below, the Court finds the ALJ's weighing of the medical-opinion evidence was erroneous.

1. Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[34]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific

---

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

and legitimate reasons" supported by substantial evidence.[35] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[36] may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

2. <u>Kaila Mitchell, LICSW</u>

Ms. Mitchell conducted hour-long psychotherapy sessions either once or twice a month with Plaintiff from October 2017 to July 2018.[39] Treatment focused on reducing Plaintiff's PTSD symptoms, namely his depression and anger. In

---

[35] *Lester*, 81 F.3d at 830.

[36] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[39] AR 590-628.

August 2018, Ms. Mitchell completed a Mental Residual Functional Capacity Assessment.[40] She opined that Plaintiff was:

- mildly limited in his abilities to remember locations and work-like procedures, and understand and remember detailed instructions;
- moderately limited in his abilities to carry out very short and simple instructions and carry out detailed instructions;
- markedly limited in his abilities to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; make simple-work related decisions; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; sustain an ordinary routine without special supervision; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and
- extremely limited in his abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and

---

[40] AR 978-82.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.

The ALJ gave little weight to Ms. Mitchell's opinion because she gave "no explanation for her ratings and the limitations she opine[d were] extreme and not supported by her treatment notes."[41]

A medical opinion may be discounted if it is conclusory and inadequately supported.[42] Therefore, an ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.[43] But if treatment notes are consistent with the opinion, a check-box report may not automatically be rejected.[44] Here, Plaintiff contends that Ms. Mitchell's opinion is supported by her treatment notes. The Court agrees.

Ms. Mitchell's treatment notes reflect that Plaintiff had difficulties managing his irritability and anger and that he became easily overwhelmed by his

---

[41] AR 21.

[42] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)

[43] *Garrison*, 759 F.3d at 1014 n.17.

[44] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

negative thoughts when he leaves the home.[45] The treatment notes also reflect that notwithstanding the counseling sessions and recommended breathing and coping skills, along with medical management, that Plaintiff continued to have difficulties regulating his emotions.[46] For instance, Ms. Mitchell noted that Plaintiff had an altercation with a medical provider that caused him to be discharged from the provider's services—this incident is reflected in other medical records as well.[47] Considering Ms. Mitchell's treatment notes, the ALJ's bare-bones proffered reasons of "no explanation for her ratings" and "not supported by her treatment notes" were not specific and germane reasons supported by substantial evidence to discount Ms. Mitchell's opinion. Moreover, Ms. Mitchell's opined limitations are consistent with the statements from Plaintiff's friends and Dr. Nestler's opinion.[48]

    3.    <u>Kirsten Nestler, M.D.</u>

In April 2016, Dr. Nestler conducted a mental-health consultative examination of Plaintiff.[49] Dr. Nestler diagnosed Plaintiff with unspecified personality disorder. She opined that Plaintiff would not have difficulty performing simple and repetitive tasks or performing detailed or complex tasks, but that he

---

[45] AR 591-95, 615, 618 & 624.

[46] AR 591, 605, 613, & 615.

[47] AR 615 & 423.

[48] AR 321-25.

[49] AR 373-77.

would have difficulty due to his personality disorder accepting instructions from supervisors and interacting with coworkers and the public, and that he may have difficulty due to his personality disorder performing work activities on a consistent basis without special or additional instructions, maintaining regular attendance in the workplace, completing a normal workday/workweek without interruptions, and dealing with the usual stress encountered in the workplace.

The ALJ gave partial weight to Dr. Nestler's opinion because Dr. Nestler indicated that Plaintiff could be exaggerating his symptoms and she was concerned that she could not properly evaluate Plaintiff's limitations due to his hostility.[50]

Evidence that a claimant exaggerated his symptoms to a provider is a reason to reject the doctor's conclusions if the doctor relied on the exaggerated symptoms.[51] Here, Dr. Nestler stated: "[Plaintiff] is a poor historian and without more outside records, it is very difficult to evaluate his prognosis further. It is possible that he could be exaggerating his symptoms today. Without more outside records to corroborate, it is very difficult for me to tell."[52] The only outside record that Dr. Nestler reviewed was a single-page January 30, 2015 office visit note signed by Dr. Kirk Strosahl regarding Plaintiff's referral for an evaluation and

---

[50] AR 21.

[51] *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

[52] AR 376.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

management of depression and stress associated with IBS.[53] While this note is signed by Dr. Strosahl, the 30-minute interview was conducted by Dr. Silberleitner, who found that Plaintiff did not seem to be struggling with depression or anxiety but rather that stress was affecting his IBS.[54] This one record fails to accurately reflect the waxing and waning of Plaintiff's psychological symptoms, which were later diagnosed to be related to PTSD. As the ALJ otherwise recognized, the record reflects that Plaintiff's mood and affect varied from labile to depressed and flat to appropriate.[55] As to the cited "appropriate" mood and affect findings, these were contained in medical notes related to Plaintiff's physical conditions.[56] In comparison, in the notes related to an appointment to establish care, Plaintiff was noted to be anxious with a depressed mood and poor insight and judgment.[57] Likewise, during a psychiatric diagnostic evaluation, Plaintiff was noted to have an anxious mood, constricted affect, paranoid thought content, and partial insight.[58]

---

[53] AR 344 & 373.

[54] AR 344.

[55] AR 20.

[56] AR 20 (citing AR 415 (IBS and emesis)); AR 509 (abdominal pain and heart concerns); AR 515 (emesis and IBS); AR 520 (syncope follow-up); AR 525 (vitamin D and IBS), & AR 530 (DSHS evaluation for IBS).

[57] AR 538-41.

[58] AR 555-59.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

During a medication management appointment and emergency room visits, Plaintiff was observed to have thought blocking, an anxious mood, and to be nervous, anxious, and depressed.[59] These records, along with Ms. Mitchell's treatment notes and the supporting letters from Plaintiff's friends, indicate that Plaintiff's psychological symptoms waxed and waned and that he had difficulty with hostility and anger.[60] Plaintiff's noted hostility and anger are consistent with Plaintiff's hostile presentation during Dr. Nestler's examination. For instance, Dr. Nestler noted that Plaintiff got derailed, he was difficult to redirect, his speech was very loud and pressured, he yelled on two occasions, and he was hostile and angry with ongoing psychomotor agitation throughout the interview.[61]

On this record, the ALJ's proffered reason that Dr. Nestler "could not properly evaluate [Plaintiff's] limitations due to his hostility"[62] is not a specific and legitimate reason supported by substantial evidence to discount Dr. Nestler's

---

[59] AR 570-73, 692, & 848.

[60] *See* AR 321 (noting that Plaintiff yells a lot); AR 323 (noting that Plaintiff is "very loud" and is "always on high alert"); AR 324-25 (noting that Plaintiff will "lash out to someone he believes is an idiot or stands on uncertain grounds on a subject he is compassionate about" and that he "rub[s] many the wrong way with his blunt language and sudden tone shifts, usually into the negative").

[61] AR 375.

[62] AR 21.

opined limitations, particularly since Dr. Nestler noted that a review of more outside records would aid in her evaluation of Plaintiff's prognosis.

### 4. Consequential Error

While the RFC limits Plaintiff to work with superficial contact with the public and only occasional interactions with coworkers and supervisors, it is unclear on this record whether these limitations sufficiently incorporate Dr. Nestler's and Ms. Mitchell's opined limitations. For instance, Dr. Nestler opined that Plaintiff may have difficulty performing work activities on a consistent basis without special or additional instruction and maintaining attendance and pace due to his personality disorder. And Ms. Mitchell opined marked and extreme social-interaction, adaptation, and sustained concentration and persistence limitations. Without a more meaningful explanation by the ALJ as to why these opinions should be discounted, the Court is unable to assess whether the ALJ's RFC is supported by substantial evidence.

### B. Other Steps: The ALJ must reevaluate.

Because the ALJ's weighing of the medical evidence impacted his weighing of Plaintiff's symptom reports (both mental-health symptoms and IBS symptoms, which are triggered by stress), the Court will not analyze Plaintiff's remaining claims. Instead, on remand, when weighing Plaintiff's symptom reports, the ALJ must more meaningfully explain how Plaintiff's reported IBS symptoms, including waxing and waning of abdominal pain and diarrhea, are inconsistent with the medical record and his activities of daily living. Neither the ALJ nor a physician

explained how the existence of only mild gastritis and a limited number of colon polyps are inconsistent with Plaintiff's reported IBS symptoms, which result in a purported need to use the restroom or lie down due to pain several times a day when his IBS flares. Moreover, the medical record reveals that Plaintiff was observed with tenderness in his abdomen during several medical appointments and emergency room visits.[63] And per documentation provided by Ms. Mitchell, Plaintiff's reported symptoms are also consistent with his diagnosed PTSD, which affects his IBS symptoms, including the documented weight loss.[64] Further, Plaintiff's supporting letters from his friends are consistent with his reported symptoms.[65] Finally, the ALJ must be mindful that a claimant can arrange daily living activities to accommodate limitations resulting from symptoms, but that full-time work may not similarly accommodate such limitations.[66]

C.  **Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The Court declines to award benefits.

---

[63] *See* AR 380, 430, 530, 692, 697, 700, 714, 726, 789, 800, 813; 848, 859, 895, & 904; *see also* AR 805 & 811 (noting that stool was watery with no solid pieces).

[64] AR 348, 339, 365, & 379, 980-82.

[65] AR 320-26.

[66] *See Molina*, 674 F.3d at 1112-13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."[67] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[68] However, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three credit-as-true conditions are met and the record reflects no serious doubt that the claimant is disabled.[69]

Because Plaintiff did not begin to participate in consistent psychotherapy until the fall of 2017, the extent of the limitations resulting from Plaintiff's PTSD and related IBS are uncertain. Thus, what additional exertional and non-exertional limitations are to be added to the RFC, such as ready access to a bathroom or additional bathroom breaks, is uncertain, as is whether there are available jobs considering the additional limitations. Therefore, the ALJ is to conduct additional proceedings, including considering whether a new consultative psychological

---

[67] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[68] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[69] *Garrison*, 759 F.3d at 1020 (citations omitted).

examination is required given that Plaintiff has since been diagnosed with PTSD and participated in psychotherapy. The Court recommends that the consultative examiner be given enough medical records to allow for a longitudinal perspective as to Plaintiff's psychological health.[70] The ALJ should also consider whether testimony should be received from a medical expert pertaining to IBS. The ALJ is to then reweigh the medical opinions (both physical and psychological) and Plaintiff's symptom reports and reevaluate the sequential process.

Accordingly, remand for further proceedings, rather than for an award of benefits, is necessary.[71]

### V.   Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

---

[70] If a consultative examination is ordered, the consultative examiner is to append the records that the examiner reviewed to the report, or at a minimum clearly identify the records reviewed.

[71] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 15th day of July 2020.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
Senior United States District Judge